[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage and other relief came to the Regional Family Trial Docket on referral from the Judicial District of Middlesex. Prior to the commencement of trial the parties reached agreement on the issues of custody and parental access. This agreement was approved by the court on October 10, 2000 and will be incorporated in CT Page 6771 the judgment. The parties appeared for trial on May 8, 2001. Both parties testified and placed documentary material into evidence. Both parties submitted written claims for relief. The court has considered all of the credible evidence and all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The following facts are found.
The parties were married on June 21, 1986 in Hartford. Both parties have resided in Connecticut continually for more than one year prior to the bringing of this action. They have two minor children issue of the marriage, namely Kevin Garret Brown, born August 17, 1990 and Sabrina Joy Brown, born December 19, 1994. No other minor children have been born to the defendant wife since the date of the marriage. The parties have not been recipients of state assistance. The marriage of the parties has broken down with no hope of reconciliation.
The plaintiff, Steven Brown (Mr. Brown), is 42 years of age and is in good general health. He has a bachelor's degree from the University of Hartford. For the past 19 years he has worked for Hewlett Packard as an account support engineer. Although his earnings have fluctuated somewhat, he preseatly earns a gross of $1,274.00 weekly.
The defendant, Sandra Brown (Ms. Brown), is 40 years of age and is in good general health. She has a bachelor's degree, a masters degree in public administration and a law degree from the University of Connecticut School of Law. Except for brief periods at the birth of the children, she has been employed throughout the marriage at a variety of jobs, primarily in insurance and real estate financing. During the 1990's she was employed for two lengthy periods of time by the FDIC at an office it opened in East Hartford to deal with the banking crises. About January 1, 2000 she began to hear rumors that the FDIC was planning to close its office in Connecticut. She was officially notified of this fact in February, 2000. In June, 2000 the FDIC office was closed and Ms. Brown was laid off. At the time of her layoff Ms. Brown's salary was $87,400 per year. Ms. Brown has not sought employment with the FDIC in another state because she thinks that it is in the children's best interests to be close to both parents. She has made a diligent job search for legal jobs in the insurance, governmental and financial services sectors in the Hartford area. She rejected one job with an insurance company at a salary of $27,000 per year. She has not chosen to make an extensive search of jobs in private practice. On an interim basis Ms. Brown has two jobs. She works 28-32 hours per week as an administrative assistant at Hartford Hospital earning $475.00 gross per week. She also works 9 hours per week in a fellowship with the Board of Trustees of the Connecticut Community Technical Colleges. She earns $143.00 weekly gross at this job. There is a possibility that this fellowship will result in a full time job with a CT Page 6772 salary of about $50,000 per year plus state benefits. Ms. Brown will not know until June whether she will get this job. On the day of trial Mr. Brown was two weeks behind in payment of his pendente lite child support for a total of $250.
The parties have been using day care for the children after school. But, it does not appear that day care is necessary to allow Ms. Brown to maintain her current employment. Therefore, there will be no child care component to the child support order.
Mr. Brown has the following retirement funds:
 Tax Cap retirement account with present balance of $19,382.19;
Deferred Profit Sharing Plan with present balance of $68,900.22; and
 Retirement Plan with present balance of $12,548.67. This plan had a balance of $4,336.31 at the time of the marriage.
Ms. Brown has the following retirement funds:
Fidelity IRA with a balance of $285.
Both parties borrowed or withdrew funds from their retirement accounts and savings just before and during the time that this case was pending. On July 8, 1999 Mr. Brown borrowed $9,000. The outstanding loan balance is $8,013.84. On February 24, 2000 Mr. Brown withdrew $7,000. Ms. Brown withdrew the following sums: $3,500 on August 31, 1999 and $1,000 on September 2, 1999. These sums have been repaid by Ms. Brown. On April 26, 2000 Ms. Brown withdrew $6,000 which has not been repaid. On August 28, 2000 the parties avoided a hearing on Ms. Brown's motion to increase pendente lite child support by agreeing that Ms. Brown would have access to funds in her savings plan for reasonable and necessary living expenses as long as she was unemployed. While she was unemployed Ms. Brown withdrew $18,299.08 from her savings plan and $2,909.19 from her pension plan. These sums were used for reasonable and necessary living expenses. The court has considered the different positions of the parties regarding credits which they each feel that they should receive on account of these various loans and distributions. These positions are rejected except for a credit which will be given to Mr. Brown for his premarital balance of $4,336.31 and a credit to Ms. Brown for the child support arrearage.
The parties have a joint debt to United Guaranty Insurance Company in CT Page 6773 the approximate amount of $7,900, and a dental bill to Hartford Dental Group in the approximate amount of $3,900 for Ms. Brown's dental work. They also owe approximately $8,000 for Federal and State taxes for 1997.
During the marriage Mr. Brown was awarded stock options for 200 shares of Hewlett Packard stock. However, Mr. Brown's ability to exercise these options is extremely limited by the terms of the option plan. These options have no value at this time.
Both parties have different versions of the events which led to the breakdown of the marriage. The evidence leads to the conclusion that each party contributed to the breakdown. Neither party is found to be more at fault.
The major issue in the case is child support. Each party has submitted a child support guidelines worksheet. Mr. Brown's is found to be more complete and accurate. Therefore, presumptive support from Mr. Brown to Ms. Brown should be $213 per week. Mr. Brown is seeking a deviation down to zero based upon Section 46b-215a-3(b)(6)(A) of the Guidelines. That section provides that the amount of presumptive support may be reduced in cases of shared physical custody:
 "When a shared physical custody arrangement exists, deviation is warranted only when:
 (I) such arrangement substantially reduces the custodial parent's, or substantially increases the noncustodial parent's, expenses for the child; and
 (ii) sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation."
Section 46b-215a-1(22) defines shared physical custody as "a situation in which the noncustodial parent exercises visitation or physical care and control of the child for periods substantially in excess of a normal visitation schedule. An equal sharing of physical care and control of the child is not required for a finding of shared physical custody."
Section (h)(4) of the Preamble to the Guidelines provides that while there is no "bright line" definitional test for shared custody situations, a "normal visitation schedule" is typically two overnights on alternate weekends, alternate holidays, some vacation time, and other visits of short duration which may occasion an overnight stay during the week. CT Page 6774
The access plan agreed upon by the parties and approved by the court provides that Mr. Brown shall have the children three overnights on alternate weekends (Thursday, Friday and Saturday), two overnights on alternate mid-weeks (Wednesday and Thursday), and an evening on alternate weeks (Tuesday). In the summer, Mr. Brown's weekends with the children extend through Monday morning. The parties share holidays equally and each has a three-week vacation in the summer. Although Mr. Brown does not have equal time with the children, the schedule does provide him with physical care and control of the children which is substantially in excess of the normal visitation schedule.
The next issue is whether the access schedule of the parties substantially reduces Ms. Brown's, or substantially increases Mr. Brown's, expenses for the children. Mr. Brown pointed to the fact that, because he has a boy and a girl, he must have a three bedroom apartment. However, this would also be true under a "normal visitation" schedule. He also claimed that he must keep more food in the house than under a "normal visitation" schedule. Certainly this is true. Undoubtedly Ms. Brown provides less food under the present plan than under "normal visitation." The same could be said for utility expenses, particularly hot water. But, whether the increase in these expenses for Mr. Brown and the decrease in these expenses for Ms. Brown could be said to be "substantial" is a difficult question. There was no evidence presented on the amount of increase or decrease.
An even larger problem for Mr. Brown is the requirement that he prove that, after the deviation, Ms. Brown will have sufficient funds to meet the basic needs of the children. This is a problem because Ms. Brown's present situation is that, even with the pendente lite support order of $125 per week, her weekly expenses exceed her weekly income by $278. Even if she receives the full amount of the presumptive support she will be $190 in the red each week. It would be difficult to say that, after a deviation, she would have sufficient funds to meet the basic needs of the children. Mr. Brown's situation is the reverse of Ms. Brown's; the payment of guidelines child support without deviation will put him in nearly the same financial position which Ms. Brown presently occupies. His financial affidavit shows that his weekly expenses exceed his weekly income by $201.31. An increase in his child support from $125 per week to $213 per week will increase his weekly deficit to $289.31 per week. This is $11.31 more than Ms. Brown's present deficit of $278. The parties simply do not have enough income to live separately at their current levels of spending. Ms. Brown needs to find a job closer to her previous earning level. Until this happens, all this court can do is apply the Guidelines as they are written. A deviation is not justified under Section 46b-215a-3(b)(6)(A) because it would not leave Ms. Brown with sufficient funds to meet the basic needs of the children. CT Page 6775
The court issues the following orders:
1. The marriage of the parties is dissolved.
2. The stipulation as to custody and visitation dated October 10, 2000 is incorporated by reference into this decree.
3. Mr. Brown shall pay to Ms. Brown child support in the amount of $213 per week. Child support shall be payable until each child attains the age of 18 years, but if still in high school, support shall continue through graduation but not beyond the age of 19 years. Payment shall be by immediate wage withholding. Each party shall notify the other within two business days of any change in employment and earnings.
4. Neither party shall pay alimony to the other party.
5. Mr. Brown shall maintain his existing medical and dental insurance for the benefit of the minor children. Mr. Brown shall pay 59% and Ms. Brown shall pay 41% of the cost of unreimbursed medical and dental expenses of the children in accordance with the Guidelines.
6. Mr. Brown shall maintain such life insurance as he has or as he has available to him through his employment in the amount of $50,000 for the benefit of the minor children until the youngest child shall reach the age of 18.
7. Mr. Brown shall retain $4,086.31 in his Retirement Plan. This represents the full premarital value minus $250 for child support arrearage. All other retirement funds of the parties shall be equalized between the parties. This equalization shall be effectuated by transfers, assignments, and/or Qualified Domestic Relations Orders as required. Both parties are ordered to sign any documents necessary to effectuate this equalization. The provisions of this paragraph are a property order and not alimony. The court shall retain jurisdiction to carry out the provisions of this paragraph.
8. Each party shall retain the personal property in his and her possession. Mr. Brown shall transfer to Ms. Brown his interest in the 1990 Saab automobile which she shall own free and clear of any claims of Mr. Brown.
9. As of 1997 Mr. Brown shall be entitled to claim the older child, Kevin, as a dependency exemption as long as he is entitled to do so as a matter of federal law as long as he is current in his child support. Ms. Brown shall be entitled to take the younger child, Sabrina, as a CT Page 6776 dependency exemption as long as she is entitled to do so as a matter of federal law.
10. The parties shall each pay one-half of the outstanding balance owing to United Guaranty Insurance Company and shall indemnify and hold the other harmless from liability for the same. Ms. Brown shall pay the outstanding balance of the dental bill owed to Hartford Dental Group and shall indemnify and hold Mr. Brown from liability for the same. As to the 1997 taxes, each party shall file federal and state returns as "Married Filing Separately" claiming one child each as a dependent. Each party will be solely responsible for the consequent individual tax liability as determined by the taxing authorities. With respect to real estate taxes due to the Town of Bloomfield, Ms. Brown shall pay all taxes, and interest due on the Saab, while Mr. Brown shall pay all taxes and interest due on the Taurus. Otherwise, the parties are to pay the debts listed on their financial affidavits and shall indemnify and hold harmless the other party.
11. Mr. Brown shall be the sole owner of the stock options for 200 shares of Hewlett Packard stock, free and clear from any claims of Ms. Brown.
12. The parties shall pay their own attorney's fees.
13. The parties shall each pay one-half of the fees and costs of Attorney Sue A. Cousineau, the total of which is $1,995. Ms. Brown has already paid her share. Therefore, Mr. Brown owes $997.50 which he is ordered to pay within 30 days.
BY THE COURT,
JOHN W. PICKARD JUDGE OF THE SUPERIOR COURT